RECEIVED
SEP 1 5 2014
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

ANDRES M. LANDOR            CIVIL ACTION NO.: 13-2759

VERSUS            JUDGE DOHERTY

SOCIETY OF THE ROMAN CATHOLIC CHURCH            MAGISTRATE JUDGE HILL
OF THE DIOCESE OF LAFAYETTE, ET AL.

## MEMORANDUM RULING

On July 14, 2014, the magistrate judge issued a Report and Recommendation [Doc. 67], recommending that the following motions be granted, and that all federal claims filed by the plaintiffs be dismissed with prejudice: (1) Motion to Dismiss filed by defendants, Society of the Roman Catholic Church of the Diocese of Lafayette (the "Diocese"), Teurlings Catholic High School, Inc. ("Teurlings"), Michael Boyer ("Boyer"), Robert Baudier ("Baudier"), and Tiffany Dugas ("Dugas"), on November 26, 2013 [Doc. 7]; (2) Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) filed by defendants, Detective Stephen Bajat ("Bajat") and Lafayette City-Parish Consolidated Government ("LCG")1, on November 27, 2013 [Doc. 8]; (3) Rule 12(b)(6) Motion to Dismiss filed by defendant, Elizabeth Menard ("Menard"), on December 13, 2013 [Doc. 18]; (4) 12(b)(6) Motion to Dismiss First Amended Complaint filed by the Diocese, Teurlings, Boyer, Baudier, and Dugas on January 7, 2014 [Doc. 35]; (5) Motion to Dismiss First Amended Complaint Pursuant to F.R.C.P. 12(b)(6) filed by Bajat and LCG on January 13, 2014 [Doc. 43]; and (6) Motion to Dismiss Supplemental Complaints Pursuant to F.R.C.P. Rule 12(b)(6) filed by LCG, Bajat, and Craft on

April 10, 2014 [Doc. 61].[1] The magistrate judge further recommends that all state law claims filed by the plaintiffs be dismissed without prejudice.

Also in his Report, the magistrate judge recommends that the Motion to Strike Second Supplemental Complaint Paragraphs 71 and 73 filed by defendants Bajat, LCG, and Chief of Police James "Jim" Craft ("Craft") on April 10, 2014 (Doc. 60) be dismissed as moot.

The plaintiffs have filed Objections to the Report [Docs. 68, 72], and defendants filed Responses to the Objections [Docs. 70 and 74]. Additionally, plaintiffs filed a Motion for Leave to File a Motion to Strike [Doc. 73] as frivolous that portion of defendants Bajat, Craft, and LCG's response to plaintiffs' Objection that alleges plaintiffs' objection was untimely filed. Plaintiffs also seek to strike the words "rather than waste any more trees" in Section II of defendants' response on grounds such words are impertinent. Defendants filed a response to the Motion for Leave to file a Motion to Strike [Doc. 75]. The Motion for Leave [Doc. 73] is GRANTED, however, the Motion to Strike is DENIED AS MOOT.

The facts of the case have been set forth in the magistrate judge's Report and will not be restated herein. Furthermore, the magistrate judge has completed a comprehensive analysis of all legal issues involved in the motion, and this Court has conducted a *de novo* review of all legal issues to which objections have been made. Because of the breadth and scope of the magistrate judge's Report, and because this Court believes the magistrate judge has correctly analyzed the issues, this Court will not prepare a lengthy separate memorandum ruling, but rather, will simply note certain clarifications herein. Thus, for the following reasons, this Court AFFIRMS the findings of the

---

[1] The plaintiffs, Andres M. Landor and Lavern Landor, personally and on behalf of their minor daughter, J.L. ("plaintiffs"), opposed the motions (Docs. 27, 38, 47, 63, and 64). LCG, Bajat, and Craft filed a Reply to the plaintiffs' opposition briefs [Doc. 65].

magistrate judge, with the following comments and clarifications.

### I. Law and Analysis

#### 1. Standard of Review

With respect to the report issued by the magistrate judge, pursuant to 28 U.S.C. § 636(b)(1), "[a] judge of the court shall make a *de novo* determination of those portions of the [magistrate judge's] report [and recommendation] or specified proposed findings or recommendations to which objection is made." Section 636(b)(1) further states "[a] judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." Therefore, this Court has made a *de novo* review of the portions of the magistrate judge's report to which the defendants object. *See Hernandez v. Estelle*, 711 F.2d 619, 620 (5th Cir. 1983).

#### 2. Title VI Claims against Teurlings and the Diocese

Plaintiffs assert a claim under Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§2000d, *et seq*, against the Diocese and Teurlings. The Title VI claim is the only one asserted against the Diocese. Stated succinctly, Title VI states a broad prohibition against the use of federal funds to aid discrimination. As the magistrate judge notes in the Report, "Title VI . . . reaches only instances of intentional discrimination." *Alexander v. Sandoval*, 532 U.S. 275, 281, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001). *See also Canutillo Indep. Sch. Dist. v. Leija*, 101 F.3d 393, 397 (5th Cir.1996) (noting that "a Title VI plaintiff must prove discriminatory intent").

The magistrate judge concluded plaintiffs fail to sufficiently state Title VI claims because they fail to allege *intentional* discrimination on the part of the institutional defendants, as follows:

Here, plaintiffs' complaint falls short of the Title VI requirement that a litigant plead facts in support of intentional discrimination. The complaint contains only broad allegations that the Diocese failed to intervene in J.L.'s suspension and that Teurlings failed to conduct a thorough investigation of the fake Instagram incident. [rec. doc. 1, ¶¶ 85-94]. The complaint does not contain a single allegation of discriminatory intent on the part of the Diocese or the other institutional defendants, and thus fails to state a valid claim against them. Accordingly, plaintiffs' claim under Title VI must fail.[2]

After a careful review of the pleadings, and overruling the plaintiffs' objections, this Court agrees with the magistrate judge. Although the plaintiffs make much of the fact that J.L. was suspended for, *inter alia*, a violation of school rules – taking pictures with her cell phone in school during class – once it was determined that other (white) students had similarly violated this rule, J.L.'s suspension was lifted. Plaintiffs' allegations concerning the suspension, therefore, do not allege intentional discrimination, and the facts do not bear out intentional discrimination on the part of either Teurlings or the Diocese. With respect to plaintiffs' allegations against the institutional defendants *vis-a-vis* their role in the creation of the fake Instagram account, plaintiffs' allegations focus on events that arose *after* the account was created and key to plaintiffs' assessment of whether these defendants sufficiently investigated the Instagram incident. Such allegations do not raise the spectre of intentional racial discrimination, and for this reason, the magistrate judge is correct that the plaintiffs fail to sufficiently state a claim under Title VI against Teurlings and the Diocese.

### 3. <u>Section 1981 Claim against Teurlings</u>

Plaintiffs allege a claim against Teurlings for violation of plaintiffs' substantive right to

---

[2] *See* Report and Recommendation, Doc. 67, at p. 14, internal citations omitted.

contract pursuant to 42 U.S.C. §1981.[3] As the magistrate judge points out in his Report, Section 1981 offers relief from racial discrimination that "blocks the creation of a contractual relationship" or "impairs an existing contractual relationship" but only where the plaintiff has, or would have, rights under the existing or proposed contractual relationship. *Grambling Univ. Nat. Alumni Ass'n v. Bd. of Sup'rs for Louisiana Sys.,* 286 Fed.Appx. 864, 869 (5th Cir. 2008) (*per curiam*), citing *Domino's* 546 U.S. at 476, 126 S.Ct. at 1250). To state a claim for relief under §1981, a plaintiff must allege (1) that he is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerns one or more of the activities enumerated in the statute. *Green v. State Bar of Texas,* 27 F.3d 1083, 1086 (5th Cir.1994). The "enumerated activity" implicated in this case is the right to "make and enforce contracts." *Id.* A conclusory allegation that the right to make and enforce contracts has been violated is insufficient. Instead, a plaintiff must (1) "identify the content of the contract at issue," (2) identify "the particular contractual rights" that were allegedly modified by the defendant's actions, and (3) plead facts showing that the defendant's actions were motivated by discriminatory intent. *Vouchides v. Houston Community College System,* 2011 WL 4592057, *8 (S.D. Texas Sept. 30, 2011), citing *Grambling,* 286 F.Appx. at 870; *cf. Domino's,* 546 U.S. at 476 ("Any claim brought under § 1981, therefore, must initially identify an impaired "contractual relationship, § 1981(b), under which the plaintiff has

---

[3] Section 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. §1981.

rights.").

Plaintiff's Section 1981 claim, in essence, alleges that because Teurlings has a student handbook containing anti-harassment and anti-discrimination policies, these policies created a contractual relationship between Teurlings and J.L., which Teurlings breached when it (1) protected defendant Menard during the investigation of the fake Instagram account, and (2) interfered with the police investigation into same. However, the magistrate concluded plaintiffs fail to state the basic elements of a Section 1981 claim because they fail to identify the specific contract or contract terms that Teurlings modified through its actions, and fail to show "racial animus" on the part of Teurlings regarding any contractual decisions. In their Objections, the plaintiffs counter only with an argument that Teurlings' racial animus is "apparent," without alleging additional facts showing the steps taken by Teurlings in its investigation of the Instagram account were taken because of race. This Court agrees with the magistrate judge that the foregoing fails to establish racial animus on the part of Teurlings while modifying a particular contract with J.L. Considering the foregoing, this Court agrees the plaintiffs fail to sufficiently allege a Section 1981 claim against Teurlings.

4. **Section 1983 Claim against Teurlings and Detective Bajat**

The essence of plaintiffs' Section 1983 claim against Teurlings and Detective Bajat is that the school and Detective Bajat conspired to impede and eventually terminate the cyberbullying investigation that began as a result of the fake Instagram account. As the magistrate judge correctly concluded, there can be no Section 1983 claim against Teurlings, because Teurlings is a private Catholic school and not a state actor. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013), *cert. denied*, 134 S.Ct. 1935 (2014).

To the extent the plaintiffs claim a conspiracy between Teurlings and Detective Bajat to

commit a violation of Section 1983 – to the extent such a cause of action is possible given the status of Teurlings as a private institution – the magistrate judge concluded the plaintiffs have failed to allege facts sufficient to give rise to such a claim, given that such a claim is not actionable without an underlying violation of Section 1983. To be clear, plaintiffs argue a private party – here, Teurlings – can be liable under 1983 if it is a wilful participant in joint activity with the State or its agents – here, Detective Bajat. *See, e.g., Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1605-06, 26 L.Ed.2d 142 (1970) ("Although this is a lawsuit against a private party, not the State or one of its officials, our cases make clear that petitioner will have made out a violation of her Fourteenth Amendment rights and will be entitled to relief under s 1983 if she can prove that a Kress employee, in the course of employment, and a Hattiesburg policeman somehow reached an understanding to deny Miss Adickes service in The Kress store, or to cause her subsequent arrest because she was a white person in the company of Negroes.").

With respect to the plaintiffs' claims of a conspiracy between Teurlings and Detective Bajat, the magistrate judge concluded the plaintiffs set forth no specific factual allegations showing a prior agreement, plan, or meeting of the minds between Teurlings and Detective Bajat, noting:

> The only allegations of a relationship between Bajat and Teurlings is that Bajat assisted with directing parking and providing security at Teurlings' football games. Plaintiffs' bare assertion of the existence of a conspiracy is insufficient to state a claim for relief that is plausible on its face. Simply stated, plaintiffs fail to create a reasonable inference that an agreement between Teurlings and Bajat existed. *See Jabary*, 547 Fed.Appx. at 611. Their §1983 conspiracy claim must therefore be dismissed.

This Court agrees. The facts as alleged do not sufficiently allege a conspiracy between Teurlings and Detective Bajat, and plaintiffs' Section 1983 claim against these defendants must be dismissed.

7

5.  **Section 1985/Equal Protection Claim against Teurlings and Detective Bajat**

The magistrate judge similarly recommends dismissal of plaintiffs' Section 1985 conspiracy claim against Teurlings and Detective Bajat. Section 1985(3) prohibits, among other things, conspiracies that interfere with the private enjoyment of "equal protection of the laws" and "equal privileges and immunities under the laws." *See Griffin v. Breckenridge*, 403 U.S. 88, 102-03, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). However, again, as the magistrate judge pointed out, an equal protection violation requires a showing of *intentional* discrimination; here, plaintiffs only vaguely allege it can be *inferred* that racial animus directed an agreement between Teurlings and Detective Bajat to thwart the cyberbullying investigation. The magistrate judge concluded – and this Court agrees – the plaintiffs have set forth no facts that support allegations of *purposeful* or *intentional* class-based or race-based discrimination which played any part in the investigation into the alleged cyberbullying. Thus, the plaintiffs have failed to present factual allegations that raise their equal protection claim above the speculative level. Therefore, plaintiffs have failed to state a legally cognizable equal protection claim.

6.  **Plaintiffs' Section 1983 claims against Chief Craft**

Finally, plaintiffs allege Chief Craft violated Andres Landor's substantive due process rights pursuant to 42 U.S.C. §1983 and the 14th Amendment by transferring him from the Metro division to Patrol. As the magistrate judge pointed out, the Louisiana statute applicable to transfers of police officers provides that "[a]ny employee may be transferred from any position in the classified service to any other position of the same class within the classified service, at the pleasure of the appointing authority without notice to and confirmation by the board." La. Rev. Stat. §33:2489. The magistrate judges notes in his Report that plaintiffs fail to allege the Metro and Patrol positions were not in the

same class within classified services. The magistrate judge addressed this argument in his Report, providing a thorough overview of the governing caselaw and a comprehensive analysis of the issue, which this Court adopts *in toto* as if included herein. Of particular note, the magistrate judge explained Mr. Landor fails to show he had a property interest in the Metro position. *See Moore v. Otero*, 557 F.2d 435, 437 (5th Cir. 1977) (officer had no property interest in his position as corporal where records revealed that police chief reassigned corporals to regular patrolman's duties). After review of the plaintiffs' Objection, this Court concludes the plaintiffs have not cured this deficiency in their Objections. The plaintiffs continue to argue that Mr. Landor's transfer from Metro to Patrol was a *de facto* demotion, in that the Patrol position carries less prestige, and Chief Craft acted with retaliatory animus when he implemented the policy resulting in Mr. Landor's transfer. Yet, as the magistrate judge pointed out, the plaintiffs have not alleged that Mr. Landor had a property interest in his assignment to Metro, and the record shows of the three officers who were transferred from Metro to Patrol at the same time as Mr. Landor, one of them was white, a fact that the magistrate judge concludes belies the plaintiffs' claims of racial animus. This Court agrees. Consequently, this Court concludes the plaintiffs fail to sufficiently state a Section 1983 claim against Chief Craft.

### 7. State Law Tort Claims

The plaintiffs assert state tort law claims under Articles 2315 and 2316 of the Louisiana Civil Code against defendants Boyer, Baudier, Dugas and Bajat (officially) [Doc. 1, ¶¶ 107-109]; under Article 2315 against defendants Boyer, Baudier, Dugas, and Bajat, (officially and personally) [¶¶ 110-119]; and under Article 2320 against defendants Teurlings and LCG for their vicarious liability [¶¶ 120-125]. Plaintiffs' only state law claim against defendant Menard, personally, is for intentional infliction of emotional distress. [Doc. 27, p. 1].

9

The decision to exercise or decline supplemental jurisdiction over the state law claims is entirely within the discretion of this Court. *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989). In making this decision, the Court must consider and weigh both the statutory provisions of 28 U.S.C. §1367(c) and the values of judicial economy, convenience, fairness and comity. *See Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350–51, 108 S.Ct. 614, 619 (1988); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). The general rule of this Circuit is "to dismiss state claims when the federal claims to which they are pendent have been dismissed." *Parker & Parsley Petroleum v. Dresser Industries*, 972 F.2d 580, 585 (5th Cir. 1992). Defendants move for dismissal of plaintiffs' state law claims in the interest of judicial economy, convenience, fairness, and comity. *Cohill*, 484 U.S. at 350, 108 S.Ct. at 619 (holding dismissal without prejudice proper under such circumstances). Defendants further argue that the Court should dismiss these state claims as a matter of law based on the lack of any substantive claims presented against them by these pleadings, and the magistrate judge recommends that this Court do so, dismissing the plaintiffs' state law claims without prejudice.

The plaintiffs do not appear to object to this recommendation in their Objections, and this Court agrees that the interests of judicial economy and fairness – coupled with the fact that the federal claims against all defendants are being dismissed today – warrant the dismissal without prejudice of the plaintiffs' state law claims.

## II. Conclusion

For the foregoing reasons, and for the additional reasons set forth in the well-reasoned and meticulously cited Report of the magistrate judge, IT IS ORDERED that the following motions are GRANTED: (1) Motion to Dismiss filed by defendants, Society of the Roman Catholic Church of

the Diocese of Lafayette (the "Diocese"), Teurlings Catholic High School, Inc. ("Teurlings"), Michael Boyer ("Boyer"), Robert Baudier ("Baudier"), and Tiffany Dugas ("Dugas"), on November 26, 2013 [Doc. 7]; (2) Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) filed by defendants, Detective Stephen Bajat ("Bajat") and Lafayette City-Parish Consolidated Government ("LCG")1, on November 27, 2013 [Doc. 8]; (3) Rule 12(b)(6) Motion to Dismiss filed by defendant, Elizabeth Menard ("Menard"), on December 13, 2013 [Doc. 18]; (4) 12(b)(6) Motion to Dismiss First Amended Complaint filed by the Diocese, Teurlings, Boyer, Baudier, and Dugas on January 7, 2014 [Doc. 35]; (5) Motion to Dismiss First Amended Complaint Pursuant to F.R.C.P. 12(b)(6) filed by Bajat and LCG on January 13, 2014 [Doc. 43]; and (6) Motion to Dismiss Supplemental Complaints Pursuant to F.R.C.P. Rule 12(b)(6) filed by LCG, Bajat, and Craft on April 10, 2014 [Doc. 61]. Considering the foregoing, all federal claims filed by the plaintiffs against the defendants are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the "Motion to Strike Second Supplemental Complaint Paragraphs 71 and 73 filed by Bajat, LCG, and Chief of Police James "Jim" Craft [Doc. 60] is DISMISSED AS MOOT.

IT IS FURTHER ORDERED that the Motion for Leave to File a Motion to Strike [Doc. 73] is GRANTED, however, the Motion to Strike is DENIED AS MOOT.

IT IS FURTHER ORDERED that the plaintiffs' state tort law claims under LA. CIV. CODE articles 2315, 2316 and 2320 are DISMISSED WITHOUT PREJUDICE, the plaintiffs not having

objected to this portion of the Report, and the dismissal of these claims appearing to be well-founded in fact and law.

THUS DONE AND SIGNED in Lafayette, Louisiana, this ____ day of September, 2014

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE